UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA    :
                            :
    v.                      :    No. 2:12-cr-00065-wks
                            :
Kevin Harris                :

**OPINION & ORDER**

Defendant Kevin Harris is charged with conspiracy to distribute cocaine and heroin, three counts of distribution of heroin, possession with intent to distribute heroin, distribution of cocaine, and possession of a firearm in furtherance of a drug trafficking crime. Harris filed a motion to suppress evidence obtained as a result of a search conducted by the Vermont Drug Task Force on September 22, 2011. The evidence he seeks to suppress includes quantities of heroin and crack cocaine, a firearm, cell phones, and a digital scale. The officers also seized an iPad containing a picture of Harris. Harris requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). For reasons set forth below, this Court **denies** both requests.

**I. Factual Summary**

**a. The Investigation**

In his September 22, 2011 supporting affidavit for the issuance of a search warrant, Detective Trooper Shawn Loan of the Vermont Drug Task Force ("VDTF") provided the following

facts. Mot. to Suppress Ex. 1, ECF No. 32-2. In August of 2011, VDTF began an investigation into the distribution of heroin and crack cocaine in the Barre, Vermont area with the assistance of a Cooperating Individual ("CI"). The target of the investigation was Lisa Barbour, an individual the CI identified as someone from whom the CI could purchase heroin and crack cocaine. Through Barbour, the CI was introduced to an individual called "Kevin" or "Black," who was only identified as defendant Kevin Harris after the execution of the search warrant on September 22, 2011. During the investigation, VDTF executed a total of three controlled purchases of heroin, opiates, or crack cocaine from the defendant. The first purchase occurred on August 9, 2011. The second and third purchases occurred on September 20, 2011.

**b. Controlled Purchases**

On August 9, 2011, the CI called Barbour at 802-279-4044 to arrange a purchase of heroin. Barbour told the CI that the CI could go to her apartment on Spaulding Street in Barre to purchase heroin. Barbour told the CI that the heroin was brought from New York City by two individuals who had been staying with her for about a week and a half. VDTF kept the CI under constant surveillance while the CI drove to the Spaulding Street apartment and entered the building. While in the apartment, Barbour introduced the CI to two black males, one of whom was

2

referred to as "Kevin" or "Black." The CI purchased heroin from Harris for $100.00. Following the purchase, VDTF tested the substance and verified that it was heroin.

On September 8, 2011, the CI informed Detective Loan that Harris was now living at 75 Prospect Street in Barre. The CI stated that Harris had used Barbour's cell phone number to inform the CI that he had recently travelled to Boston and returned with a quantity of crack cocaine.

On September 20, 2011, Detective Loan obtained a warrant from Vermont Superior Court Judge Howard Van Benthuysen to record the voice and conversations of "Black." Later that day, Detective Loan met with the CI, who told Loan that Harris was using the 802-279-4044 phone number. Detective Loan watched the CI call the 802-279-4044 number on the CI's cell phone and recorded the ensuing conversation, during which the CI and Harris discussed the price and availability of heroin. The CI was given $300.00 to purchase heroin and was equipped with an Audio Transmitting Device ("ATD"). While driving to the 75 Prospect Street apartment, the CI contacted Harris and told him that she was near the 75 Prospect Street residence. Harris told the CI to park at an adjacent apartment building to the north of 75 Prospect Street and to access the apartment through an entrance in the rear of the building. VDTF observed the CI arrive at apartment building at approximately 7:05 p.m. and

3

enter the rear of the building.  VDTF members monitored the Audio Transmitting Device throughout the transaction. The CI exited the building at approximately 7:15 p.m. and entered her vehicle. Detective Loan followed the CI to a predetermined location where the CI gave Loan a bag containing a brown, powdery substance. The CI said that she purchased the drugs from Harris. Her statement was corroborated by the recording of the transaction. The substance later tested positive for Opium alkaloids.

    Detective Loan recovered the heroin from the first purchase at approximately 7:20 p.m.  At 7:37 p.m., Detective Loan saw the CI call the 802-279-4044 phone number. The call went to voicemail. At 7:39 p.m., the CI received a call from Harris on the 802-279-4044 phone number. The call was recorded. During the call, the CI told Harris that "we want to try some of that what we were talking about when I was up there," referring to crack cocaine. VDTF gave the CI $300.00 to purchase crack cocaine and kept constant surveillance while the CI travelled back to the 75 Prospect Street apartment. At 7:46 p.m., the CI called Harris to tell him that she was near the 75 Prospect Street residence. At 7:50 p.m., the CI parked on the south side of the building, exited her vehicle, and entered the rear of the building.  VDTF members monitored the Audio Transmitting Device throughout the transaction. At 7:53 p.m. the CI exited the building and entered

her vehicle. Detective Loan followed the CI to a predetermined location where the CI gave Loan seven small bags containing a white granular substance. The substance later tested positive for cocaine. The CI provided two sworn statements describing both transactions, including her interaction with Harris and the entrance to the apartment through a hallway in the rear of the building.

On September 22, 2011, members of VDTF visited the building at 75 Prospect Street and verified the accuracy of the CI's description of the entrance to the apartment.

### c. Statement by John Wiley

On September 21, 2011, Detective Loan spoke with Detective Michael Fish of the Colchester Police Department. Detective Fish was investigating two heroin overdoses that occurred in Colchester on September 19, 2011, one of which was fatal. During the investigation, Detective Fish arrested John Wiley, who provided a statement implicating Harris in the overdoses. Detective Loan included an excerpt of Detective Fish's report in his affidavit. The following facts were contained in the excerpt.

Wiley admitted to injecting one of the individuals who overdosed. He stated that he obtained the heroin from an individual from the New York area who had been staying with him. He described the individual as tall and very thin, about 6'2"

and 160 pounds. Wiley said that he believed his first name was Kevin, that he went by the nickname "Black," and was about 26 years old. This physical description of "Kevin" matches the defendant.

Wiley stated that he gave Harris a ride to Barre. It is unclear from the excerpt when this occurred. Wiley indicated that he took Harris to an apartment that was accessed from the rear of the building. Detective Fish and Wiley identified the residence using Google Maps. The description of the residence was consistent with the 75 Prospect Street building where the CI purchased heroin and crack cocaine.

**d. The Search Warrant**

On September 22, 2011, Detective Loan applied for a search warrant and submitted a supporting affidavit detailing his investigation. Later that day, Vermont Superior Court Judge Howard Van Benthuysen issued the warrant. The warrant authorized a search of (1) the 75 Prospect Street apartment; (2) "Kevin and/or 'Black' LAST NAME UNKNOWN (LNU) DOB unknown (Search of person)"; (3) "Two black males (names unknown) who were present during Task Force transactions (Search of persons)"; and (4) "Cell phones of Kevin "Black" LAST NAME UNKNOWN (LNU) and any other resident to include phone number (802) 279-4044." Mot. to Suppress Ex. 1, ECF No. 32-2.

6

VDTF executed the warrant on September 22, 2011 at the 75 Prospect Street apartment. Anthony Miller and Dondre Chisom were present when the VDTF members arrived. Rebecca O'Neill returned to the apartment during the search after dropping Harris off at the bus station. VDTF seized a Smith and Wesson .38 caliber revolver, 27 grams of crack cocaine packaged in half-gram bags, 11 grams of heroin, a digital scale, and multiple cell phones including the 802-279-4044 cell phone used throughout the investigation. After VDTF executed the warrant, O'Neill informed the officers that there was an iPad in her bedroom. She provided written consent for the officers to reenter the apartment to seize and search the iPad. Chisom, the owner of the iPad, also provided written consent for the officers to search the iPad. The officers recovered the iPad and later obtained a warrant to search the iPad, which contained a picture of Harris.

## II.  Discussion

Harris has moved to suppress the evidence obtained in the search on the grounds that the affidavit submitted in support of the search warrant did not establish probable cause. He argues that the warrant is invalid because it is overbroad and does not describe persons or items to be searched with sufficient particularity. Harris also argues that Detective Loan knowingly or intentionally made false statements and material omissions in the affidavit, both of which constitute *Franks* violations. *See*

*Franks v. Delaware*, 438 U.S. 154 (1978). Finally, Harris argues that the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply because the affidavit contained false and misleading statements.

**a. Probable Cause to Obtain Search Warrant**

The Fourth Amendment protects individuals from unreasonable searches and seizures and requires that search warrants be issued only on the basis of probable cause. An issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

When evaluating a magistrate's probable cause determination, a reviewing court's responsibility is "simply to ensure that the magistrate had a 'substantial basis for…conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alterations in original). The issuing magistrate's finding of probable cause is entitled to substantial deference. *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980). "In order to encourage the use of warrants, supporting affidavits should be read 'in a commonsense and realistic fashion,' and in a close

8

case any doubts should be resolved in favor of upholding the warrant." *Id.* at 13-14 (citations omitted).

The affidavit in support of the search warrant clearly established probable cause to believe that evidence of a crime would be found in the 75 Prospect Street apartment. Prior controlled purchases of drugs occurred at the residence within two days of the warrant. The controlled purchases established the informant's reliability and VDTF independently corroborated information provided by the informant. The information from Detective Fish's investigation provided further support for the belief that Harris was selling heroin and crack cocaine from the 75 Prospect Street apartment.

The CI's reliability was established from the controlled purchases on August 9, 2011 and September 20, 2011. VDTF visually monitored the CI before and after each purchase and recovered the drugs from the transactions. VDTF monitored and recorded the second and third purchases using an audio transmitting device, thereby verifying the CI's observations. All of the phone calls between the CI and Harris on September 20, 2011 were also recorded. Finally, VDTF corroborated the accuracy of the CI's description of the hallway and entrance to the apartment.

Detective Fish's investigation independently connected Harris to the 75 Prospect Street apartment. Wiley accurately described

9

Harris's physical appearance, stated that his nickname was "Black," and that he was selling heroin in Burlington and Barre. Wiley was able to identify the location where he dropped Harris off as the 75 Prospect Street building using Google Maps.

Based on the totality of the circumstances presented in the supporting affidavit, the magistrate had a substantial basis for finding probable cause to search the apartment.

**b. Validity of Warrant: Particularity and Over Breadth**

Search warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement prevents "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), and "reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). Search warrants that authorize a search of an entire residence are permissible to the extent that the warrant provides "some limitation curtailing the officers' discretion when executing the warrant…." *Id. See also United States v. Buck*, 813 F.2d 588, 590–93 (2d Cir. 1987). A warrant that identifies the specific crime being investigated limits discretion and "enable[s] the executing officer to ascertain with reasonable certainty those items that the magistrate authorized him to seize." *Id.* at 75. A detailed list

of items to be seized can narrow the scope of a warrant and "save[]…more expansive sections from invalidity…." *Buck*, 813 F.2d at 591 (quoting *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976)).

"Fourth Amendment rights are personal, and may be enforced only by persons whose *own* protection under the Amendment has been violated." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)) (emphasis in original). "[A] defendant's Fourth Amendment rights are violated 'only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party.'" *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *United States v. Payner*, 447 U.S. 727, 731 (1980)) (emphasis in original). "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

Whether Harris had a legitimate expectation of privacy in the 75 Prospect Street apartment —and therefore standing to challenge the search at all—is unclear. Harris was not a resident of the apartment; rather, he appears to have stayed in various locations in Vermont and New York during the time period leading up to the search. The CI first met Harris on August 9,

2011 at Barbour's residence on Spaulding Street in Barre where Harris had been staying for just over a week. In early September of 2011, the CI learned that Harris had moved to the 75 Prospect Street apartment and was selling drugs from that location. From Wiley's statements, it appears that Wiley first met Harris during a trip to New York City and that Harris travelled to New York frequently. Def.'s Resp., Ex. 8 at 2. ECF No. 36-4. Wiley stated that Harris occasionally stayed in Burlington with Wiley as well as "other places" in Vermont. *Id.* In particular, Wiley stated that Harris stayed with him the weekend of September 17, 2011, just five days before the search was executed. Def.'s Resp., Ex. 7 at 2. ECF No. 36-3.

Even if the court were to find that Harris had a legitimate expectation of privacy in the apartment, his particularity and overbreadth challenges fail for the reasons stated below. Harris objects to paragraphs two and three of the warrant on the grounds that they do not describe persons to be searched with sufficient particularity.[1] Although paragraph two authorizes a search of Harris, he was not present when the warrant was executed and was not searched. Therefore, he lacks standing to challenge paragraph two because he was not a "victim of a search." *Jones v. United States*, 362 U.S. 257, 261 (1960).

---

[1] Paragraph Two reads: "Kevin and/or 'Black' LAST NAME UNKNOWN (LNU) DOB unknown (Search of person)." Mot. to Suppress Ex. 1, ECF No. 32-2. Paragraph Three reads: "Two black males (names unknown) who were present during Task Force transactions (Search of persons)." *Id.*

Similarly, Harris may not challenge paragraph three because it authorizes a search of third parties. *Id.*

Harris further objects to paragraph four,[2] arguing that it "fails because it confusingly describes the search of cell phones that 'include the phone number (802) 279-4044.'" Mot. to Suppress 9, ECF No. 32. Paragraph four does not fail for want of particularity. It clearly authorizes the seizure of the cell phone assigned 802-279-4044 and any other cell phones in the apartment.

The warrant's authorization to search the entire apartment for "any evidence of criminal violations involving the sale and distribution of regulated drugs" is not impermissibly overbroad. Mot. to Suppress, Ex. 1, ECF No. 32-2. The warrant includes a detailed list of items that the officers were authorized to seize and required that all evidence be related to the distribution of regulated drugs. The scope of the warrant was sufficiently narrow to prevent a general search of the apartment. *See Buck*, 813 F.2d at 591.

Finally, Harris cannot object to the search of the iPad because both Chisom and O'Neill consented to the search. Mot. to Suppress, Ex. 3, ECF No. 32-4 & Ex. 4, ECF No. 32-5. The iPad belongs to Chisom and was found in O'Neill's bedroom. Therefore,

---

[2] Paragraph Four reads: "Cell phones of Kevin "Black" LAST NAME UNKNOWN (LNU) and any other resident to include phone number (802)279-4044." Mot. to Suppress Ex. 1, ECF No. 32-2.

as the individuals who possessed "authority over [the] premises or effects," their consent is valid against Harris's objection. *Matlock*, 415 U.S. at 171.

### c. *Franks* Violation

For Harris to succeed on his motion for a *Franks* hearing, he must overcome a two-step hurdle. First, he must make a "substantial preliminary showing" that Detective Loan "knowingly or intentionally or with reckless disregard for the truth" included a false statement or material omission in his supporting affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Second, Harris must show that the false statement was "necessary to the finding of probable cause." *Id.* at 156.

Harris asserts that the affidavit contained material omissions and falsehoods relating to "Black's" use of the 802-279-4044 cell phone. Mot. to Suppress 12, ECF No. 32. In particular, Harris objects to the statement that "Black" was the sole user of the cell phone and asserts that Detective Loan failed to include evidence that another individual had used the cell phone.

Neither objection carries weight. First, the CI, not Detective Loan, asserted that the cell phone "is now used solely by 'Black.'" Mot. to Suppress, Ex. 2, ECF 32-2 ¶ 7. Second, Detective Loan included in the affidavit a transcript of a phone call to 802-279-4044 between the CI and an "Unknown male" that

14

clearly indicates that another individual used the 802-279-4044 cell phone. Mot. to Suppress, Ex. 2, ECF 32-2 ¶ 10. Detective Loan did not make a misrepresentation in the affidavit.

Even if Harris had shown that the affidavit contained material omissions or falsehoods, whether "Black" was the sole user of the cell phone is immaterial. While the cell phone was instrumental in coordinating the transactions, it was not the sole basis for connecting Harris to the transactions. The CI purchased drugs from Harris in person on three occasions and Detective Loan was able to corroborate a significant amount of information provided by the informant. Under the totality of the circumstances, the information in the affidavit established probable cause as discussed above.

It has come to light that the government in its opposition to the motion to suppress incorrectly stated that the subject apartment is "the only residence accessed by the rear entrance of 75 Prospect Street." In fact, the rear entrance to the apartment building leads to several apartments. The Defendant argues that this error is attributable to misrepresentations in the supporting affidavit, rather than a mistake by counsel. However, nowhere in his affidavit does Detective Loan represent that the rear entrance to the building leads to only one apartment. The government's mistake is therefore not attributable to a misrepresentation in the affidavit.

Moreover, even if the mistake had been caused by a misrepresentation, whether the rear entrance leads to one or more apartments is immaterial to the finding of probable cause. As discussed above, the three controlled purchases from Harris and the officers' corroboration of information from the CI established ample probable cause to search the apartment.

### d. Good-Faith Exception

Under *United States v. Leon*, evidence is admissible in a criminal trial when officers rely in good-faith on a search warrant later determined to be unsupported by probable cause. 468 U.S. 897, 926 (1984). The good-faith exception does not apply when (1) the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role"; (3) the warrant entirely lacks "indicia of probable cause"; and (4) the warrant is "so facially deficient…that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

Harris argues that good-faith exception does not apply because the magistrate was misled by Detective Loan's affidavit. As discussed above, the affidavit did not contain any false statements or material omissions by Detective Loan and therefore the good-faith exception applies.

### e. Photo Identification Evidence

Assuming that the defendant does not contest that the photograph used to identify him was in fact him, how the government obtained the photograph is irrelevant. The defendant is not entitled to the discovery of how the photograph was obtained.

### III. Conclusion

For the reasons stated above, this Court **denies** Harris's motion to suppress evidence and request for a *Franks* hearing.

Dated at Burlington, in the District of Vermont, this 27th day of March, 2013.

/s/William K. Sessions III_  
William K. Sessions III  
U.S. District Court Judge