UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                            Crim. Action No. 2:12–cr–65–wks–1

Kevin Harris

**REPORT AND RECOMMENDATION**
(Doc. 127)

      Defendant Kevin Harris, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence following vacatur of a prior state conviction. (Doc. 127.) On April 12, 2013, a federal jury found Harris guilty of five counts related to a conspiracy to distribute heroin and cocaine base. (Docs. 20, 63.) On January 30, 2014, Harris was sentenced to 151 months in prison on the five counts, with each sentence to run concurrently. (Docs. 88, 90.) Following a retroactive amendment to the Sentencing Guidelines, on August 18, 2015 this Court resentenced Harris to 135 months on the five counts. (Doc. 103.)

      Harris now seeks a second resentencing for his federal conviction because on June 17, 2020, he was notified that his predicate state conviction for marijuana possession in 2006 was "dismissed/expunged." (Doc. 127 at 4.) The government opposes Harris's Motion, arguing that the Motion constitutes a second or successive § 2255 motion requiring authorization from the Second Circuit and that, in any event, Harris cannot show "a fundamental defect" in his 135-month sentence that

"inherently results in a complete miscarriage of justice." (Doc. 130 at 1 (internal quotation marks omitted).) Harris has also submitted a Reply. (Doc. 132.)

For the reasons stated below, I recommend that Harris's § 2255 Motion (Doc. 127) be DENIED.

## Factual and Procedural Background

### I.   The Charge and Trial

On April 19, 2012, a federal grand jury returned an Indictment charging Harris with six counts related to a conspiracy to distribute cocaine base and heroin. (Doc. 1.) Harris was arraigned on July 24, 2012, and pleaded not guilty to all charges. (Doc. 8.) On December 14, 2012, the government filed an information pursuant to 21 U.S.C. § 851 notifying Harris of its intent to seek a sentencing enhancement based on Harris's two prior felony drug convictions in New York state court in 2008. (Doc. 17.) A Superseding Indictment was filed on January 3, 2013, containing the original six counts and adding a new count for gun possession in furtherance of a drug trafficking crime. (Doc. 20.)

On April 12, 2013, a jury found Harris guilty on five counts: Count One, conspiring to distribute heroin and over 28 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846; Counts Three through Five, knowingly and intentionally distributing either heroin or cocaine base on September 20 and September 22, 2011, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 18 U.S.C. § 2; and Count Six, knowingly and intentionally possessing heroin and cocaine base

with the intent to distribute those substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 18 U.S.C. § 2.  (Doc. 63.)

## II.   The Presentence Investigation Report and Sentencing

A presentence report (PSR) was submitted to the Court in anticipation of sentencing.  The PSR noted that, based on the 21 U.S.C. § 851 notice of prior conviction and the drug quantity allegation set forth in Count One, Harris's Count One conviction carried a 10-year mandatory minimum with a maximum of life imprisonment under 21 U.S.C. § 841(b)(1)(B), and that for Counts Three through Six, the maximum term of imprisonment was 30 years pursuant to 21 U.S.C. § 841(b)(1)(C).  (PSR at 22, ¶ 83.)

For the Sentencing Guideline calculation, the PSR began with a base offense level of 30.  (*Id.* at 13–14, ¶ 39.)  The PSR added two levels to this base offense level because Harris possessed a dangerous weapon and two additional levels because Harris made a credible threat to use violence.  (*Id.* at 14, ¶ 40 (citing USSG § 2D1.1(b)(1), (2).)  Finally, the PSR determined that Harris was a career offender under USSG § 4B1.1 and added three additional levels because Harris had at least two prior felony controlled-substance offenses.  (*Id.* ¶ 45.)  Thus, Harris's adjusted offense level was 37.  (*Id.*)  The PSR further concluded that Harris had a criminal history score of 11.  (*Id.* at 18, ¶ 59.)  This score included two points for a prior conviction for false personation in New York.  (*Id.* at 16, ¶ 52.)  Generally, 11 criminal history points would have placed Harris in a Criminal History Category (CHC) of V, but the PSR concluded that, because of Harris's status as a career

3

offender, the CHC was VI. (*Id.* at 18, ¶ 59.) With a total offense level of 37 and a CHC of VI, Harris faced an advisory Sentencing Guideline imprisonment range of 360 months to life. (*Id.* at 22, ¶ 84.)

On January 27 and January 30, 2014, Harris appeared for sentencing proceedings. (Docs. 86, 88, 94.) After hearing witness testimony and reviewing the evidence, the Court made several adjustments to Harris's adjusted offense level. First, based on the parties' agreement, the Court concluded that Harris was not a career offender under the advisory Sentencing Guidelines. (Doc. 94 at 11.) Next, the Court set the base offense level at 30 based on the amount of drugs described in the testimony. (*Id.* at 181, 237.) To this base level, the Court added a two-level enhancement under USSG § 2D1.1(b)(1) because the testimony established that Harris had been in possession of a firearm. (*Id.* at 182, 237.) But the Court found that the testimony did not credibly establish that Harris had made a threat and, as a result, the Court did not add a two-level enhancement under § 2D1.1(b)(2). (*Id.* at 183–84, 237.) Thus, the Court determined that Harris's adjusted offense level was 32, yielding a sentencing range of 168–210 months. (*Id.* at 237.) After reviewing the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court determined that a "modest adjustment" was appropriate and further reduced Harris's offense level to 31. (*Id.* at 236–37.)

The Court also adjusted Harris's criminal history score, concluding that the testimony and evidence supported the assessment of only seven points, resulting in a CHC of IV. (*Id.* at 183–85, 237.) Harris's prior 2006 misdemeanor conviction for

marijuana possession in New York accounted for one point. (*Id.* at 157–58; PSR at 17, ¶ 53.) With an offense level of 31 and a CHC of IV, Harris's recommended sentencing range was 151–188 months. (Doc. 94 at 236.) Ultimately, the Court sentenced Harris to 151 months in prison on all counts, to run concurrently. (*Id.* at 237.)

## III. Resentencing

Subsequently, Amendment 782 to the Sentencing Guidelines retroactively amended the drug quantity table in USSG § 2D1.1(c), reducing the offense level for all controlled substance offenses. This meant that Harris's base offense level was reduced from 30 to 28. (*Cf.* PSR at 13–14, ¶ 39.) With the two-level enhancement for firearm possession the original sentencing court had applied, Harris's new total offense level was 30. This yielded a new recommended sentencing range of 135–168 months. Based on this amended Guideline range and after taking into account the factors set forth in 18 U.S.C. § 3553(a), the Court issued an order on August 17, 2015, resentencing Harris to 135 months in prison, with the reduction effective November 1, 2015. (*See* Doc. 103.)

## IV. Direct Appeal and First § 2255 Motion

Harris's attorney timely filed an appeal of Harris's conviction and sentence. (Doc. 91.) Harris also submitted a *pro se* brief, raising six additional arguments, including that his trial violated his right to a speedy trial and that "law enforcement used a photographic identification procedure that was impermissibly suggestive." Appellant's Pro Se Supplemental Brief, *United States v. Harris*,

5

598 F. App'x 44 (2d Cir. 2015) (No. 14-458, ECF No. 60 at 28–30, 32). On March 17, 2015, the Second Circuit affirmed Harris's conviction and sentence. In its summary order, the Second Circuit noted that the court "considered Harris's pro se arguments and consider[ed] them to be without merit." *Harris*, 598 F. App'x at 45 n.2.

On March 31, 2017,[1] the Court docketed Harris's first § 2255 Motion, in which Harris argued that his attorney provided ineffective assistance of counsel, in part, by failing to file a motion to dismiss the charges based on violations of his right to a speedy trial and by failing to file a motion to suppress a witness's identification based on an impermissibly suggestive photographic array. (Doc. 106 at 8–12, 14–16.) Harris also alleged errors by the Court at both his original sentencing and his resentencing. (*Id.* at 16–18, 20–21.)

On February 27, 2018, the undersigned issued a Report and Recommendation, recommending Harris's 2017 § 2255 Motion be denied because his claims were barred by the statute of limitations and other procedural requirements and, in any event, were meritless. (Doc. 121.) On March 27, 2018, over Harris's objection, the Court adopted the Report and Recommendation in full and declined to issue a certificate of appealability because Harris had failed to make a substantial showing of the denial of a federal right. (Docs. 123, 124.) Harris did not appeal.

## V.     The Instant § 2255 Motion

On July 28, 2020, Harris filed the instant § 2255 Motion. (Doc. 127.) He argues that his sentence should be further reduced because his 2006 New York

---

[1] Although Harris's first § 2255 Motion is dated January 2017, the Court did not receive it for filing until March 31, 2017. (*See* Doc. 106 at 23.)

conviction for marijuana possession was recently vacated. (*Id.* at 4.) Specifically, Harris advises that the State of New York enacted a law, effective January 2020, "decriminaliz[ing] small amounts of marijuana and expung[ing]/dismiss[ing] prior convictions." (*Id.*) He states that he was notified on June 17, 2020 that his 2006 misdemeanor conviction had been vacated. (*Id.*) Removing that conviction from consideration, Harris argues that he only has six criminal history points, which reduces his CHC category from IV to III and yields a revised Guidelines range of 120–134 months. (*Id.*) He therefore contends that he is entitled to resentencing because omission of his 2006 marijuana conviction "would have reasonably resulted in a less harsh[] sentence" and he "could receive a sentence at or near 120 months or less." (*Id.* at 4, 5.) Harris also acknowledges that he previously filed a § 2255 Motion, but argues that his current Motion should not be considered second or successive because, "at the time of [his] initial [§] 2255 [Motion,] the facts supporting the claims raised here did not exist, and could not have been raised at an earlier time." (*Id.* at 3.)

The government argues in opposition that Harris's Motion constitutes a second or successive petition that must first be certified by the Court of Appeals pursuant to 28 U.S.C. § 2255(h) and § 2244(b) before being considered by the district court. (Doc. 130 at 1.) The government further argues that Harris is not entitled to relief because he cannot demonstrate that his sentence constitutes a miscarriage of justice. (*Id.* at 16–17.) Specifically, the government avers that: (1) Harris's original sentence was lawful when it was imposed; (2) his original

7

sentence fell 17 months below the advisory Guidelines range of 168–210 months, applicable before the Court "modest[ly] adjust[ed]" Harris's offense level to 31; and (3) his original sentence fell within the Guidelines range that would have been applicable if the 2006 marijuana conviction had been omitted from his criminal history score. (*Id.*)

## Analysis

### I. Legal Standards Governing § 2255 Motions

As noted above, Harris has moved to vacate his sentence based on the state court's vacatur of his 2006 marijuana possession conviction. A person in custody under a sentence of a federal court may seek to correct that sentence under 28 U.S.C. § 2255(a) if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." Relief under § 2255 for non-constitutional claims is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted); *see also United States v. Addonizio*, 442 U.S. 178, 185 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)).

As the Second Circuit has instructed, "§ 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (quoting *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996)). The petitioner bears the burden of establishing that he is entitled to relief under § 2255. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995); *see also Hoskins*, 905 F.3d at 103 n.6 ("The burden is on [petitioner] to demonstrate miscarriage of justice . . . .").

## II. Second or Successive § 2255 Motion

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner generally cannot file a "second or successive" § 2255 motion in a district court without first obtaining authorization from the appropriate court of appeals. *See* 28 U.S.C. §§ 2255(h), 2244(b)(3). In the Second Circuit, when a petitioner improperly files a second or successive motion in the district court without prior authorization, the district court lacks jurisdiction to consider the motion and should transfer it to the Court of Appeals. *Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996) (per curiam).

A § 2255 motion is typically considered "second or successive" when it attacks the same conviction or sentence as a prior § 2255 motion, and that prior motion was decided on the merits. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011) (per curiam); *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998). There is no dispute that Harris previously filed a § 2255 motion challenging the same judgment

9

that he seeks to challenge now, which was denied on the merits. (Doc. 127 at 2; Doc. 130 at 8.) However, Harris argues that his second-in-time § 2255 Motion is not "second or successive" within the meaning of AEDPA because the basis for his current Motion—vacatur of his 2006 state conviction[2]—did not exist at the time of his initial Motion and therefore could not have been raised at that time. (Doc. 127 at 3.)

As the government concedes, at least three Courts of Appeal have held that numerically second § 2255 motions, premised on the vacatur of a state conviction that occurred after a first § 2255 motion was denied, are not "successive" under § 2255(h). (Doc. 130 at 9.) In *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011), the petitioner filed a numerically second § 2255 motion seeking vacatur of his career offender enhancement and resentencing after a Georgia state court vacated predicate state convictions. *Id.* at 858. Relying on the Supreme Court's decisions in *Johnson v. United States*, 544 U.S. 295 (2005), and *Panetti v. Quarterman*, 551 U.S. 930 (2007), as well as the Fifth Circuit's decision in *Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009), the Eleventh Circuit held that the petitioner's

---

[2] Harris asserts that his current § 2255 Motion is timely under 28 U.S.C. § 2255(f), which provides that a petitioner must file his Motion within one year from the latest of several dates, one being "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2255(f)(4). In *Johnson v. United States*, 544 U.S. 295 (2005), the United States Supreme Court held that vacatur of a predicate state conviction constitutes a new "fact" under § 2255(f)(4), triggering a renewed one-year limitations period in which to seek collateral review of a federal sentence, so long as the petitioner "has shown due diligence in seeking the [vacatur] order." *Id.* at 302, 308. Harris argues that he was diligent in seeking vacatur of his 2006 marijuana conviction and that he was notified of the vacatur on June 17, 2020. (Doc. 127 at 3–4.) His instant § 2255 Motion was signed less than two months later on July 28, 2020, and docketed by the Court on August 6, 2020. The government does not contend that Harris's Motion was untimely. Therefore, the Court limits its inquiry to whether his Motion is "second or successive" within the meaning of AEDPA.

"situation falls within . . . a small subset of unavailable claims that must not be categorized as successive." *Stewart*, 646 F.3d at 863. Specifically, because the predicate state convictions had not yet been vacated, "the basis for his . . . claim did not exist before his proceedings on his initial § 2255 motion concluded[;] [therefore,] Stewart's numerically second motion is not 'second or successive.'" *Id.* at 865. Both the Fourth and Tenth Circuits have also held that such motions are not second or successive. *See United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014); *In re Weathersby*, 717 F.3d 1108, 1111 (10th Cir. 2013).

Presented with a similar claim in *Pabon v. United States*, 990 F. Supp. 2d 254, 259 (E.D.N.Y. 2013), the district court in the Eastern District of New York declined to follow *Stewart* because Pabon's claim was factually distinguishable. The court explained: "[T]he basis for [Pabon's] claim . . . *did* exist at the time of [his] initial § 2255 motion; he merely asserts that he did not know it because the state court failed to send him its order. However, not knowing of the vacatur order is not . . . the same as the vacatur order not existing, as in *Stewart*." *Id.* (emphasis added).

Here, by contrast, Harris's claim factually parallels the claim in *Stewart*; the vacatur order of his 2006 marijuana possession conviction did not exist at the time of his initial § 2255 Motion in 2017. *See also James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002) ("Because the claim asserted in the 1999 petition did not exist when James filed his 1997 petition, the 1999 petition was not 'second or successive' for the purposes of AEDPA's gatekeeping provisions."). Accordingly, I recommend the

11

Court find that Harris's second-in-time § 2255 Motion is not "second or successive" within the meaning of AEDPA and therefore need not be transferred to the Second Circuit for prior authorization under § 2255(h).

### III.   Merits of § 2255 Motion

Even if Harris's instant § 2255 Motion is considered "second or successive," however, "transfer [to the Court of Appeals] is unnecessary where the second or successive habeas corpus application is wholly without merit." *Minaya v. United States*, 41 F. Supp. 3d 343, 345 (S.D.N.Y. 2014); *see also Mallet v. Miller*, 442 F. Supp. 2d 156, 157 (S.D.N.Y. 2006).  28 U.S.C. § 2255(a) provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano*, 83 F.3d at 590 (internal quotation marks omitted).  In the Second Circuit, § 2255 review is "narrowly limited in order to preserve the finality of criminal sentences." *Id.* (internal quotation marks omitted).

Harris claims he is entitled to relief because his now-vacated 2006 marijuana conviction inflated his CHC from III to IV and therefore increased his Guidelines imprisonment range.  (Doc. 127 at 4.)  He asserts that omission of that 2006

conviction from consideration would have yielded a Guidelines range of 120–134 months and "would have reasonably resulted in a less harsh[] sentence" because he "could receive a sentence at or near 120 months or less." (*Id.* at 4–5.) For the reasons explained below, I recommend the Court find that Harris has failed to meet the "high bar" required for defendants to upset a federal sentence under § 2255. *Hoskins*, 905 F.3d at 103.

There can be no dispute that Harris's original sentence of 151 months and his amended sentence of 135 months were both lawful when they were imposed. *Cf. id.* ("Certainly, at the time the district court initially imposed that sentence, applying the career offender enhancement to his Guidelines calculation was not error—constitutional, legal, or jurisdictional."). The vacatur of an underlying state conviction, by itself, does not automatically render the continued imposition of his current sentence unlawful. *See Addonizio*, 442 U.S. at 186–87 (holding that a "later development" that "did not affect the lawfulness of the judgment itself—then or now," is not enough to vacate the sentence imposed). Rather, Harris must show that the "continued imposition" of his sentence constitutes "a miscarriage of justice." *Hoskins*, 905 F.3d at 103. He fails to carry that burden.

First, the inclusion of the one point arising from the New York marijuana conviction did not result in a greater sentence. The Court determined that Harris's exposure under the advisory Sentencing Guidelines was 168–210 months, based on an offense level of 32 and CHC of IV. If the marijuana conviction had been excluded, Harris would have faced a range of 151–188 months, based on an offense

13

level of 32 and a CHC of III.  The Court, in fact, granted Harris's request for a non-Guideline sentence[3] and imposed a sentence of 151 months, which was later lowered to 135 months as a result of Amendment 782 to the Sentencing Guidelines.  Thus, it is clear that inclusion of the marijuana conviction had no role in the determination of Harris's ultimate sentence.

Second, Harris's original 151-month sentence fell 17 months below the originally applicable Guidelines range of 168–210 months and at the bottom of the 151–188-month range ultimately relied on by the Court.[4]  Likewise, when Harris was re-sentenced following Amendment 782 to the Sentencing Guidelines, the revised recommended sentencing range was 135–168 months, based on an offense level of 30 and a CHC of IV.  Harris's amended sentence of 135 months falls at the bottom of that range.  Removing the now-vacated 2006 marijuana conviction from consideration, with an offense level of 30 and a CHC of III, Harris's new calculated Guidelines range is 121–151 months, not 120–134 months as Harris contends.  Harris's amended sentence of 135 months falls comfortably within that range.  "This makes it particularly difficult for him to show that such a sentence manifests

---

[3] The Court made a "modest adjustment" to Harris's offense level, reducing it to 31.  (Doc. 94 at 236–37.)  Thus, Harris's revised Guidelines range at the time of his original sentencing was also 151–188 months.

[4] Moreover, even if the Court had both adjusted his offense level down to 31 *and* omitted the marijuana conviction from his criminal history score, his advisory Guidelines imprisonment range would have been 135–168 months, calculated using an offense level of 31 and a CHC of III.  Harris's original 151-month sentence lies well within that range.  Although "district courts cannot presume the reasonableness of a Guidelines sentence," *Hoskins*, 905 F.3d at 104, "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable," *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (internal quotation marks omitted).

a complete miscarriage of justice." *Hoskins*, 905 F.3d at 104. Accordingly, because it cannot be said that Harris's sentence constitutes a fundamental miscarriage of justice, he is not entitled to the resentencing he seeks.

## Conclusion

For these reasons, I recommend Harris's § 2255 Motion to Set Aside, Vacate, or Correct Sentence (Doc. 127) be DENIED.

Because the Motion and other files and records in this case "conclusively show that [Harris] is entitled to no relief," there is no need to conduct an evidentiary hearing on the motion. 28 U.S.C. § 2255(b). Further, the court should decline to issue a certificate of appealability because Harris has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Here, Harris has not met this burden, because letting his federal sentence stand does not constitute a miscarriage of justice despite the vacatur of his 2006 state marijuana conviction.

Dated at Burlington, in the District of Vermont, this 3rd day of November 2020.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).